The first case today is 2014-7108, Herbert v. McDonald. Mr. Cameron, please proceed. We're appealing the Veterans' Court's misinterpretation of presumption of regularity in addressing the question of whether the VA properly mailed an August 2003 rating decision. We believe that the Veterans' Court applied an incorrect test in requiring that the Veterans' pro se evidence must indicate that the purpose of the request was the result of an irregular VA mailing. That places a burden on an unsophisticated person who is not going to know whether the VA's mailing has been regular or irregular. All he knows is he hasn't received what he thinks he should have received on his claim. I would also point out when Mr. Herbert called the VA in the appeal period for the rating decision, he informed the VA regional office that he wanted to appeal. On that day, it appears that the regional office planned to send him a copy of the denial letter. Within approximately six days, the same person appears to have reviewed the claims file and concluded that there was not a VA Form 9 in the file and they had not received an appeal. Well, there was not one pending and so they sent a VA Form 9 to the Veteran so that he could complete his appeal. Our contention is that when the VA recognizes that the Veteran needs to file a VA Form 9 to complete his appeal, that's a recognition by the VA that it's received his NOD and has issued a statement of the case on the claim. Because we know under the statute, the Veteran is not required to file his VA Form 9 for formal appeal until after he files his Notice of Disagreement and after the VA has issued the required statement of the case. One of the things that I found difficult to ferret out here was to keep the various strains of his various claims straight. He had made a number of claims going back, I guess, to 1993. Well, 1993 ultimately made a claim in 2000, but made several different claims, including one as to which there was a denial, I guess, in February 2002 regarding the back and left knee and a statement of the case ultimately in March 2003. So it wasn't clear to me whether the appeal that they were referring to in the little cryptic note on the piece of paper was an appeal from that denial and statement of the case or an appeal from something that happened in August, I guess, of 2003. Can you enlighten us at all on that? I can. I think I can. You're referring to the February 2002 rating decision, 81-82. Right, which then, I guess, gave rise, or perhaps it didn't because there was then a request for reopening that intervened, but there was a statement of the case that was issued in March 2003, right? That was all that claim. Now, I guess my question is, the natural assumption would be if the VA is the official that's making a determination that this is something as to which he needs a Form 9, the assumption would be that that official would know that this is right for an appeal, which would be where there's an SOC, right? Where an SOC has been issued within the last 60 days of the last one year. Yeah. Where the veteran has a potential to file a timely formal appeal in response to it. Right. But in the case that you're referring to, the March 2003... Right. He just asked, what's the state of my case? Well... So, you know, there are several different cases going on at the same time. So it wasn't clear to me, I guess what I'm saying, it wasn't clear to me that they were referring to a case to which there had not yet been a statement of the case. Right. I think that, you know, it is a cryptic note. I agree with that. But when he called in August 2004, that March 2003 and 2002 claim were finally denied. I mean, there was no appeal possible at that point. Because he was required to file his VA Form 9 on that claim by March of 2004. I'm sorry, by May of 2004. So in August of 2004, when he called about a different claim... Well, that's the question, I guess. Was he calling about a different claim? What claim was he calling about? Well... This wasn't clear to me in the record. Listen, I think that it wouldn't serve any useful purpose to call about the earlier claim. But he wouldn't necessarily know that. And presumably, unless the VA official who took the call and wrote the note had looked at the record, they wouldn't know that time had expired for that case. Well, assuming that... They had the claims file, so I assume that they did look at the claims file. If they told him what he needed to do in the scripted note... You see, what I'm saying is, on that day, on August 2004, he has no viable claims except the one, the 2003 denial. Because the 2002 rating decisions are already finally denied. But it wouldn't make sense to send him a Form 9 at that point, would it? I mean, wouldn't... Isn't the problem at that point that he hasn't had a notice of disagreement? Right? Which would have triggered the statement of the case, which in turn would have given him a right of appeal. Right. But that's my point, Your Honor, is that the scripted note, as you call it, creates an irregularity, a glaring irregularity, in terms of whether he's supposed to file a notice of disagreement, or he's required to file a Viet Form 9. And when the Veterans Court considered his rebuttal evidence, the court looked at this document and said that it said it referred... It sent him a new copy of the denial letter, but the court didn't refer to the part of the scripted note that says that he'd be required to file a Viet Form 9 to complete his appeal. So, what I'm saying to you is, this document on its face in the claims file during the appeal period of that rating decision creates a glaring contradiction or irregularity, and it's not possible to tell us what happened. The problem is, doesn't that fall into the category, even if I were to agree with you, of things that aren't within our jurisdiction to decide? I mean, they found the presumption of regularity had not been rebutted here, and you're saying it should have been rebutted because he called in and told them he didn't have a copy of the decision. Well, they held that as an evidentiary matter, that wasn't enough. That's really what's at issue in front of us, and that's not a bad application of law of fact. I don't see how that's a legal question. I think, though, there's more to it. I think it's based on an interpretation, a misinterpretation. Of what? Of the presumption of regularity, that the evidence would need to indicate that it was a result of an irregular mailing. I mean, that almost places a specific burden on the veteran to point out that his correspondence or his contact was for the purpose of showing irregularity in the VA's mailing. And I think that unduly limits the veteran's consideration of the rebuttal evidence. What would you think is the correct legal interpretation for when the presumption of regularity should be rebutted? How would you articulate that interpretation? I think that if the document creates an irregularity on its face, as was foreheld in United States v. Roses, that the presumption of regularity doesn't benefit the document. Regularity in what respect, exactly? In other words, my understanding is that if the document has the wrong address, that's an irregularity and it's on its face. You can see they obviously sent it to an address that isn't his address and therefore that's virtually proof positive that he didn't receive it. But what is the nature? That indicates that the document on its face was sent to his address. It appears. And there's no indication that the document was not sent. Nothing on the face of it indicates that it wasn't sent. There's not an extra copy, one too many copies in the file or anything like that, which is the normal kind of irregularity in the sending process. What other kinds of irregularity do you think fit within this doctrine of irregularity and presumption of regularity? Well, I think that during the appeal period, he provided contact. He contacted the VA and suggested, he essentially resulted in evidence being placed in his claims file, which tended to indicate that he had not received the writing decision, which suggests that the VA had not mailed it. Well, the question is what evidence. There's no evidence on the face of the documents we have that VA didn't mail the documents, right? That's right. Under the presumption of regularity, the VA did mail the documents. Okay. And what I'm having a hard time figuring out is exactly what is the legal rule that you think should be applied and was not applied in this case to excuse or get around the presumption of regularity? How would you characterize that legal rule that you're asking us to adopt? I think that he placed evidence, the veteran placed evidence in his claims file during the appeal period of that writing decision that tended to indicate that he had not received it, and therefore the VA had not mailed it. Would the rule be that any time a veteran requests a copy of the RO denial letter, that is a rebuttal of the presumption that the RO letter was mailed in the first place? I think that that would be evidence. That would be rebuttal evidence. Right, but so much of your case rests on the notion that there was a misinterpretation of the presumption and how one rebuts the presumption. We're trying to work with you to figure out what is the legal rule that you're proposing, and is the rule that any time a veteran asks for a copy of the RO letter, that rebuts the presumption that the RO letter was ever mailed in the first instance? I think that it would when it indicates that he hadn't received it and the VA had not mailed it. But I think the most important... Well, we would indicate. Judge Chen's question to me gets the heart of it. Is it enough, do you think, if all we have is that the veteran called and said, I didn't receive this letter, this notice of decision, or where is my notice of decision? Send me a copy, send me another copy. Is that enough to rebut the presumption of regularity? I'm not sure that that is enough to rebut it, but I think that it is rebuttal of evidence. And in this case, the veteran's court did not consider all of the evidence in that It did not consider that at the same time that the VA sent him a copy of his writing decision, they also sent him a VA Form 9 requiring him to file that, which suggests, contrary to the situation, that the VA had already received his NOD  Why would the sending of a Form 9 suggest that the veteran didn't receive a copy of the RO denial letter back in August 2003? I think that's the point. It would suggest that he had already filed his NOD to it, or the VA had treated this encrypted note as his NOD to that writing decision. I do want to save some time for a rebuttal, Mr. Cameron. Okay. Thank you. We'll hear from the government. Mr. Javar? Good morning, and may it please the Court. The parties agree on a few key points in this case, which I think are critical. First of all, there's no dispute about the applicable legal standards. We indicated in our brief that the appropriate legal standard was whether there's been clear evidence to rebut the presumption of regularity, and in his reply brief at page 3, Mr. Herbert acknowledges that's a fact. So I guess the question is what could constitute clear evidence rebutting the presumption of regularity. Is it the government's view that suppose that the veteran had called the agency six times over the span of two weeks saying, I still don't have this, I don't want my appeal period to run out, can you fax it to me, can you email it to me, and he keeps calling back and saying, I still haven't gotten it, here's the address, here's the fax number. Suppose there was this overwhelming evidence of record that he hadn't received it, and he was trying to diligently pursue his rights. Would that alone be enough? If you look back in your file and you see, oh, the address is correct in here, I don't know why you didn't receive it. Would that be enough? Your Honor, I'm not sure that that still would be enough. I think that's still within the category of non-receipt, and under this Court's precedent, under the veteran's Court precedent, non-receipt alone is not enough. Now, there may be some other ground that that veteran could pursue. I think under – what precedent of ours says non-receipt is not enough? The Miley case from this Court in 2004 would be that case. And what exactly does it say? Because it was my understanding that the standard that you're asserting is appellate asserts non-receipt and provides clear evidence of what? That's what I need to understand, of what? Clear evidence of the fact that it must not have occurred in a regular way, the Miley, right? That's correct. Can't his repeated phone calls over and over with a sense of urgency convey that? Can't that be not just an assertion of non-receipt, but evidence of the fact that something must have happened because he failed to receive it? Well, I think the fact that he's repeatedly calling would just, again, indicate non-receipt. And there could be other grounds. If the VA knows that the deadline is approaching and does not respond to that request in a timely manner, there could be an argument before the RO that the VA didn't properly assist the veteran or didn't properly respond to the veteran. That would be a different claim than the presumption of regularity. The presumption of regularity solely deals with whether, in fact, the decision was mailed. And calling several times would simply indicate non-receipt. The extra factor that's usually present in these cases is that oftentimes there is an incorrect address. There are a lot of cases out there where the zip code is incorrect or there's no apartment number. But those are easy cases. I mean, nobody's disputing them. I'm wondering if ever there could be a sufficient record of non-receipt in the absence of an incorrect address. I mean, if he didn't receive it, he can't come forward and say, see, look, you got the zip code wrong when you typed it out. All you have is whatever copy exists in the file at the VA, right? That's correct. Sure, to answer your Honor's question, again, that's not the situation that's here, just to be clear. We only have a record of one particular call. Would that back pattern be a case for tolling of the one-year period to file the NOD? Yes, that perhaps could be the argument, was that if you make repeated calls and the regional office does not respond to those in a timely manner and the regional office is aware that your deadline is approaching, then you could make the argument for equitable tolling that you diligently pursued it, and these are extraordinary circumstances. Notably, Mr. Herbert did not pursue that argument here. It was not considered by the Board or the Veterans Authority. So it seems to me that you're making kind of a two-part argument with respect to the presumption of regularity. And following up on the presiding judge's questions, the first part seems to be that there is a rebuttable presumption of regularity with respect to mailing, which can be rebutted, for example, by having the wrong apartment number or zip code. But the second part seems to be that there is essentially an irrebuttable presumption of receipt once the mailing is shown to have been regular. Therefore, that is to say, once you see that the letter, even if you have the perfect proof that the letter actually went out and got into the hands of the Postal Service, there's sort of an irrebuttable presumption that it must have been received. Is that in effect what you're saying here? I don't think it's absolutely irrebuttable, but again, as it must be clear... But I guess when you were talking with the presiding judge, you were saying, and that's what made me think that you have a different rule for the receipt issue, you were saying, well, that goes to receipt. And that's outside of the scope of the presumption of regularity that we're concerned with, because you're going to assume conclusively that once it goes out of the VA with the right address and all indications that it's on its course to him, that the fact that it doesn't actually get into his hands is his problem, not yours. Is that your position? There may be a situation, Your Honor, where there is some evidence that the veteran is able to come forward with, even in that situation, that meets the clear evidence standard. Well, wouldn't that fall within Judge Moore's example of somebody that says, I haven't received it, I haven't received it, I haven't received it. That sounds like pretty good evidence that he didn't receive it, at least at that point. That's correct, Your Honor, but I guess I'm having trouble squaring that with, again, the precedent that's out there that says that non-receipt alone, an assertion of non-receipt, and I don't know that multiple assertions of non-receipt would be treated any differently, an assertion of non-receipt is not sufficient to rebut the presumption. Again, as Judge Ten pointed out, there may be, in that situation, where the regional office is aware that the deadline is approaching and the veteran is making a lot of requests, showing diligence, perhaps, and extraordinary circumstances, there may be a case for tolling. Well, I don't want to focus on tolling, though. I'm trying to understand because the veteran has raised an argument about the legal standard for the presumption of regularity, and so I'm trying to understand exactly what the presumption of regularity entails, and I think that Judge Bryson's question gets to the heart of it, which is, is it only about mailing, or is it also about receipt? And, I mean, I look at many of the veterans' court cases, Shute and Clark and others, and they talk about how you can rebut, now these are veterans' court cases, they're not ours, for sure, but they talk about an assertion of non-receipt standing alone does not rebut the presumption of regularity in the VA's mailing process. Instead, the clear evidence requirement mandates not only a declaration by the appellant of non-receipt, but additional evidence to corroborate the appellant's declaration, such as an addressing error by the VA that was consequential to delivery, and it goes on to talk about, and that's why I guess what I'm wondering is, are there circumstances beyond a tangible indication of an address inaccuracy that could give rise to a belief that the veteran really has established he didn't receive it, like those repeated phone calls, or are those just not eligible under the presumption of regularity for creating a rebuttal by the veteran? Yeah, before I directly address your question, I'll just note that that's not the situation that we have here. We just have one phone call, not repeated phone calls, and in addition... Yes, but if the veterans' court or the board was working under the misimpression that evidence of non-receipt by the veteran could never meet whatever the legal standard is for the presumption of regularity, then even one phone call matters. It may be harmless error in this case, or maybe not, but it's a question of what was the lower tribunal of the impression was eligible to rebut this presumption. Sure, and I think the clear evidence standard is not a rigid test, so this is dependent on the R.O. and the board to look at the evidence and determine if it is... Again, it's against what legal test is what's really important. Well, I think that there are a lot of indicia of non-receipt. One is the address, which we discussed. Another one that's been dealt with in the case law is where, for instance, the rating decision is missing a cover sheet, so there's no indication of any address that it was sent to. Another indicia that is in the case law is that there's something abnormal in the claims file. Sometimes a document is missing the statement of appellate rights, or there's some other attachment to the document that's missing. So those are the sorts of indicia that this court and the veterans court, as well as the board, have looked to in order to determine whether there's enough irregularity there to rebut the presumption of regularity. Non-receipt is a difficult... You know, this court's precedents make clear that non-receipt is not enough  Suppose that the veteran lived in the Ninth Ward in New Orleans during the time of Katrina, and the mailing was perfectly proper mailing, proper address, everything else, was sent out a week before Katrina, and the veteran said, I didn't receive it. Would that be evidence that would be sufficient to rebut the presumption of regularity, the fact that the hurricane basically destroyed the infrastructure of the city, including presumably postal deliveries? Well, sir, that would show that the mailing practices of the VA were not regular. No, no, no. The VA sent the letter out. Everything the VA did, up until they handed it over to the Postal Service, was perfectly regular. But the question is, does the possibility, indeed likelihood, and their certainty that there was a problem in delivery, does that work to rebut the presumption of regularity? This goes right back to the question of whether the court, in saying that you need clear evidence that the VA did not follow its mailing practices, that you need that kind of evidence in order to rebut the presumption of regularity. Because my case presumes the VA followed its mailing practices. Do you then conclude that in my case, he loses? Well, the text is that the VA did not follow its mailing practices, or that its mailing practices were not regular. And I think in your situation... No, no. The mailing practice was regular. Unless by mailing practice you include all the activities of the Postal Service. Well, I would think that mailing something to a hurricane-stricken region and expecting someone to receive it would be irregular. It was May of the week before the hurricane. So the VA, in other words, the VA was totally non-culpable in this. And for that matter, neither was the Post Office culpable. But we can say with some assurance that the letter was not received. If the answer, he loses, because it doesn't satisfy the test that I just read you. I think that would be a factor that would go into the clear evidence standard. I can't predict how that would come out in a hypothetical. But what you're saying is that even though the VA had followed its regular mailing practices to a T, nonetheless, you could rebut the presumption of regularity. And if you're saying that, why isn't the test, that test, different from the test that was applied by the CAVC in this case? The CAVC applied the clear evidence test. Well, clear evidence, but against what legal standard? When I say test, I'm talking about the legal standard, not the degree of, the probative degree of the evidence. Right. I still think that under your hypothetical, that falls under whether the mailing practices were regular. Even if the VA mailed it in advance of an event, if the VA has evidence that suggests that mail is not being delivered to a specific region, then I think that would be evidence that the VA's mailing practices. Let me give you another hypothetical. My mailman gets angry when I park the minivan too close to the mailbox. Not when it blocks the mailbox, mind you, but if it's just so close as to require him to have to get out of the car, as opposed to be able to lean up, put the mail in, and keep driving forward. He doesn't even like to have to put the mail truck in reverse. He leaves me tons of mean little post-it notes, handwritten by him all the time. And in fact, verbally told me at various points, when I come home, usually I've got a mailbox full of junk. And sometimes I come home and there's nothing in it. And the next day the mailman says, next time, don't put that mail, that minivan there. He is clearly, unequivocally, admitting to me that there are days when he doesn't deliver my mail with a penalty for my minivan being too close. I never complain. Honestly, not much comes in the mail that I care about. However, suppose that there was unequivocal evidence, like the mailman actually filed an affidavit saying he threw away my mail on those days because he was angry about my minivan. Now, I'm a veteran. And he happened to throw away my receipt of the decision in my case. Now, the VA couldn't have predicted, by virtue of a hurricane, that subnational catastrophe that is well known. But suppose I offer this affidavit by my post office employee that says he threw away all my mail for an entire week as a penalty to me and whatever, whatever, whatever. The VA has done nothing wrong. But it's also making a really strong case for my non-receipt. Would that be enough to rebut the presumption of regularity? I guess what I'm trying to get at is, does the regularity go only to the VA's action or does it extend to other parties' actions within the branch of the government, like the post office? I think that the clear evidence test is flexible enough to take into account whether or not there is additional circumstance apart from the VA's particular mailing practices. I don't think an affidavit from your postal carrier saying that he didn't deliver the mail, I don't think that evidence would be excluded as not falling within the clear evidence test. Or do you think the clear evidence of the CAVC would agree with you in that respect, given that they said that you need clear evidence that the VA did not follow its regular mailing practices? Because that sounds like it doesn't include Judge Moore's postman. I don't think the VA, I don't think the Veterans Court was necessarily trying to contemplate every single situation that could come into play. I think the only issue that was really presented here was whether or not the VA had followed its mailing practices. And so that was, those were the facts before it. And that was a situational threat. I think that the, again, I think the clear evidence standard is flexible enough to encompass all of it. And I do think that in this case, it's solely about the application of that test. Okay, Mr. DeBoer, thank you. We have your argument. Mr. Cameron, let's give him two minutes of rebuttal time, please. Your Honor, under the cases that you have referred to earlier, including Chute, the courts typically recognize that when a veteran comes forward after the matter and says, you know, I didn't receive it, that's the allegation of non-receipt. But the court has typically found that when the claims file has contained evidence during the appeal period that the veteran did not receive the rating decision. And the court has typically concluded that that is clear evidence to rebut the presumption. Now, I believe that the problem here was a misinterpretation by the Veterans Court in applying a very narrow test on page 11, essentially, of its decision that the veteran's document or evidence would have to indicate that the purpose of his request was the result of an irregular mailing. And, you know, when somebody calls into the VA or they send a letter into the VA, you know, they don't know enough to say, well, you know, my purpose in sending this letter is I want to rebut the presumption of regularity. And so I think it's an improper interpretation of the presumption of regularity. And I think that was the problem. Okay. Anything further? No, Your Honor. Thank you, Mr. Cameron. The case is taken under submission. I thank both counsel for their argument. Thank you.